1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10
ANGELA D. HOBSON and ADERUS D. MILAN,

CASE NO. C09-361RSM

11
ORDER

Plaintiffs,

12
v.

13
HSC REAL ESTATE, INC.,

14
Defendant.

15

16

Plaintiffs Angela Hobson and Aderus Milan, appearing *pro se* and *in forma pauperis*,
17
filed this action for housing discrimination pursuant to 42 U.S.C. §1981 and Washington state
18
law.  Dkt. # 3.  The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343, and
19
supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.  The plaintiffs
20
subsequently amended their complaint with leave of Court to add claims for breach of contract
21
and spoliation of evidence, and clarified that their federal claims of racial and disability
22
discrimination arise under 42 U.S.C. §1981 and Title VIII of the Civil Rights Act of 1968.
23
Amended Complaint, Dkt. # 144.
24

Title VIII was enacted as the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and amended by the Fair Housing Amendments Act of 1988 ("FHAA"), Pub.L. No. 100-430, 102 Stat. 1626 (1988) ("1988 Amendments").   The statute has a two-year statute of limitations, which plaintiffs later acknowledged in seeking leave to amend their complaint a second time, in part to delete this claim.  42 U.S.C. § 3613(a)(1)(b);   Plaintiff's Second Motion to Amend, Dkt. # 171, p. 3.  Although the Court did not grant leave to amend the complaint at this late date, plaintiffs' admission that their FHA claim is barred by the applicable statute of limitations will be deemed an abandonment of this claim.  This leaves plaintiffs' §1981 claim as their sole federal claim.

This matter is before the Court for consideration of defendant's motion for summary judgment, Dkt. # 110.  Plaintiffs  have opposed the motion.  After thorough consideration of the parties' memoranda, declarations, and admissible exhibits, the Court has determined that the motion for summary judgment be granted.

## FACTUAL BACKGROUND

Plaintiff Angela Hobson submitted an application to rent an apartment at the Metropolitan Towers, owned by defendant HSC Real Estate, Inc. ("HSC"), in downtown Seattle in August, 2005. Ms. Hobson, who is African-American, had a good employment history at Nordstrom and other companies in the Seattle area, and lived previously at the Harbor Steps apartments with her long-term boyfriend and companion Aderus Milan, who is also African-American. Declaration of Angela Hobson, Dkt. # 177, ¶¶ 1-7.  In 2003, prior to the events at issue in this suit, Ms. Hobson was injured in an automobile accident while driving to work at Sephora

ORDER - 2

in University Village.  She has been under a doctor's care for spinal injury and on disability from that time through the relevant period of this action.  *Id*., ¶¶ 8, 9.

Rental applications at Metropolitan Towers are screened for eligibility by a third party, Residential Screening Services ("RSS").  Ms. Hobson's application indicated that she was "currently on disability" until the end of October, 2005.  Declaration of Elizabeth Bjelland, Dkt. # 111, Exhibit A.   RSS assigned her application a score of "8" which indicates conditional approval.  The noted concern was Ms. Hobson's lack of employment income, as she was on disability.  The screening form indicates that she would be approved with a qualified co-signor. *Id*.  Property Manager Elizabeth Bjelland requested that Ms. Hobson be approved with a different condition, namely payment in advance of first and last month's rent, instead of with a co-signor. *Id.*  Ms. Bjelland's request was approved on August 30, 2005, by manager Sara Strazzara.  *Id*.

Ms. Hobson signed a lease agreement on September 10, 2005.  Declaration of Elizabeth Bjelland, Dkt. # 111, Exhibit C.  The lease was for a term of six months and 21 days, starting September 10, 2005 and ending March 31, 2006, at the rate of $1090 per month.  *Id*.  At the end of the term, absent written twenty-day notice of intent to vacate, the lease would automatically revert to a month-to-month rental for an additional $100 per month.  *Id*.   Paragraph 12 of the lease states that occupancy of the apartment is limited to one person, naming Angela Hobson.  *Id*. Any change in occupancy required prior written approval of the owner of the building.  *Id*.  The lease states,

> It shall be a violation of this Agreement and grounds for termination of Resident's tenancy for Resident to permit a greater number of listed occupants to reside in the Apartment than the number listed herein.  Any person occupying the apartment on a regular but not necessarily continuous basis for a period in excess of thirty (30) days shall be deemed to reside in the apartment.

ORDER - 3

*Id.*, ¶ 12.

Mr. Milan toured the apartment building with Ms. Hobson when she chose her apartment, but did not apply as a co-renter or co-signer on the lease because he planned to move away soon. The Metropolitan Tower agent with whom they toured was Jason McCulloch.   Mr. Milan advised the agent that he would be staying with Ms. Hobson to care for her during and after her upcoming back surgery.  Declaration of Aderus Milan, Dkt. # 178, ¶¶ 17, 19.   Mr. Milan paid the initial rent and deposit, in the amount of $2450 for first and last month's rent, plus a security deposit.  *Id.*, ¶ 26.  Mr. McCulloch issued keys to the building and to Ms. Hobson's apartment to Mr. Milan.  *Id.*, ¶ 27.  Mr. McCulloch states that he had the approval of Assistant Manager Jo Ann Kim in issuing the keys.  Declaration of Jason McCulloch, Dkt. # 178-6, Exhibit N.

Mr. Milan moved to Chicago around November 1, 2005, taking his belongings. Declaration of Angela Hobson, Dkt. # 177, ¶ 30.   He returned sometime in December at Ms. Hobson's request, as she was having difficulty managing on her own;  she could not lift heavy items, and personal care and going to the store were difficult.   *Id.*, ¶ 31.   Mr. Milan arrived sometime in December and requested an application so he could be added to the lease.  By late January he had not turned in the completed application.  Declaration of Elizabeth Bjelland, Dkt. # 111, ¶ 12;  Declaration of Aderus Milan, Dkt. # 178, ¶¶ 36, 38, 43, 44.

On January 25, 2006, Ms. Bjelland sent Ms. Hobson a "10-Day Notice," citing violation of paragraph 12 of the lease by having an extra occupant, and demanding that she either comply with the lease agreement or vacate the premises.  Declaration of Bjelland, Dkt. # 111, ¶ 12 and Exhibit D.   Five days later, on January 30, Mr. Milan submitted his completed application.  *Id.*, ¶ 13 and Exhibit E.  RSS performed the screening, arrived at a score of -4, and recommended

ORDER - 4

that the application be denied, noting Mr. Milan's negative credit (14 collections totaling $15,509). *Id.*,¶ 13 and Exhibit F. He was therefore not approved as an "add-on" roommate. Nor could he be approved as a co-applicant, as had he and Ms. Hobson applied together his low score would have resulted in a non-qualifying combined score. *Id.*, ¶ 14.

As it appeared that Mr. Milan continued to reside in Ms. Hobson's apartment, Ms. Bjelland sent another "10-Day Notice" on February 17, 2006. *Id.*, ¶ 15. This notice required Ms. Hobson to either show proof that Mr. Milan was actually residing elsewhere, or vacate the premises for violation of her lease. *Id.* Ms. Hobson's next rent payment was due on March 1, 2006 but she did not make the payment. *Id.*, ¶ 16. On March 7, 2006, with the rent payment a week overdue, Assistant Manager Jo Ann Kim gave Ms. Hobson a "3-Day Notice" to pay rent or vacate. *Id.*, ¶ 16 and Exhibit H. The notice included a list of payments due, including, in addition to the rent, a $75 late charge, $35 for storage fees, and $25 in service fees, for a total of $1225. *Id.* Ms. Hobson responded with a letter asking that her previously-paid "last month" rent be applied to March, and that she be considered on "month to month" status with the additional payment of $100 a month as specified in the lease. *Id.*, Exhibit I. She offered to pay the $35 storage fee but asked that other charges be reversed, and that Mr. Milan be added as a co-tenant. *Id.* She suggested that other "similarly situated (non-black) 'visitors'" had been treated as tenants, and reminded the reader of the letter that selective enforcement of rules is discriminatory under state and federal law. *Id.*

In response to Ms. Hobson's letter asking that her "last month" rent be applied to March, Ms. Bjelland wrote back on March 13, 2006, and explained that the "last month" rent could not be applied unless it was in fact the last month because she was vacating the premises. As Ms.

ORDER - 5

Hobson had not given notice of intent to vacate and instead asked to continue on as a month-to-month tenant, the "last month" rent could not be applied unless Ms. Hobson signed a "Mutual Termination of Tenancy" agreement, agreeing to vacate the apartment. *Id.*, Exhibit J. This letter also advised Ms. Hobson that eviction proceedings would be instituted against her if she did not either sign the agreement or pay the rent and fees demanded in the "3-Day Notice." *Id.*

Ms. Hobson wrote back on March 16, 2006, declining to sign the Mutual Termination of Tenancy. *Id.*, Exhibit K. She tendered a check for $1190 to cover April rent (including the $100 month-to-month tenancy fee), and maintained her request that the "last month" rent deposit be applied to March. *Id.* She closed the letter saying, "I am maintaining my insistence that your application requirements of Aderus were inequitable and therefore, unlawful. However, it is still possible to come to a mutual agreement that all involved parties can live with in these matters." *Id.* Defendant declined to accept the tendered check for rent for April, and returned it to Ms. Hobson. Declaration of Elizabeth Bjelland, Dkt. # 111, ¶ 17.

Defendant filed an unlawful detainer action against Ms. Hobson in King County Superior Court on March 26, 2006. Second Declaration of Counsel, Dkt. # 112, Exhibit A. Ms. Hobson was represented by counsel in the proceedings. Judgment was entered in favor of defendant HSC and against Ms. Hobson on April 4, 2006, and an amended judgment was entered on May 16, 2006. *Id.* Plaintiffs vacated the premises in May.

On March 13, 2006, Ms. Hobson filed a complaint of housing discrimination on the basis of race with the Seattle Office of Civil Rights ("SOCR"). This complaint was served upon Ms. Bjelland on March 31, 2006. Declaration of Elizabeth Bjelland, Dkt. # 11, Exhibit L. Plaintiffs voluntarily withdrew their SOCR complaint on July 25, 2006, saying they wished to pursue the

ORDER - 6

case on their own.  Second Declaration of Counsel, Dkt. # 112, Exhibit B.  As of that date, no determination had been reached.  Plaintiffs filed this action  March 20, 2009.  Dkt. ## 1, 4.

DISCUSSION

## I. **Summary Judgment Standard**

The Court shall grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a) (as amended December 1, 2010). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is disputed must support the assertion by citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations. Fed.R.Civ.P. 56(c)(1)(A). The Court need only consider the cited materials, but may in its discretion consider other materials in the record. Fed.R.Civ.P. 56(c)(3). The Court may also render judgment independent of the motion, and grant the motion on grounds not raised by a party, after giving notice and a reasonable time to respond. Fed.R.Civ.P. 56(f)(2).

## II. **Section 1981 Claim of Discrimination**

Section 1981 of Title 42 of the United States Code provides that:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same rights in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

ORDER - 7

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

42 U.S.C. §1981.

The relevant provision in §1981 extends to private conduct and protects two rights: "to make and enforce contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989). The courts have applied the "make and enforce contracts" provision of §1981 to claims of racial discrimination in both the employment and housing contexts.[1] *See, Lindsey v. SLT Los Angeles, LLC*, 447 F. 3d 1138, 1145 (9th Cir. 2006). Proof of intent to discriminate is necessary to establish a violation of §1981. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 390-91 (1982); *Washington v. Garrett*, 10 F.3d 1421, 1431-32 (9th Cir.1993).

There are two ways for a plaintiff to establish intentional discrimination in violation of §1981. Where direct evidence of intent to discriminate is not available, a plaintiff may proceed through the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See, Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1180 n. 11 (9th Cir.1998) ("This Court applies the same standards to disparate treatment claims pursuant to Title

---

[1] Title 42 U.S.C. §1981 prohibits discrimination on the basis of an employee's race only. *Kendall v. Catterson*, 2008 WL 131042, * 6 n. 3 (D.Idaho 2008) (*citing White v. Wash. Pub. Power Supply Sys.*, 692 F.2d 1286, 1290 (9th Cir.1982) ("It is well settled that section 1981 only redresses discrimination based on plaintiff's race."). It does not apply to claims of disability discrimination.

ORDER - 8

VII, the Age Discrimination in Employment Act, and §§ 1981 and 1983."). Summary judgment motions in §1981 cases are governed by these burden shifting provisions. *Garrett*, 10 F.3d at 1432.

Under the *McDonnell Douglas* test, a plaintiff has the initial burden of showing a prima facie case of discrimination. *Patterson*, 491 U.S. at 186. The burden is not onerous. *Id.* Once plaintiff has shown the elements of a prima facie case, the burden of production shifts to defendant to articulate, though not necessarily prove, a legitimate, nondiscriminatory reason for the challenged action. *See McDonnell Douglas*, 411 U.S. at 802-03. If defendant articulates a proper basis for its conduct, the burden shifts back to plaintiff in the third stage of the analysis to raise a genuine factual issue that defendant's proffered reasons were simply a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804-05; *Garrett*, 10 F.3d at 1432. Notwithstanding the shifting burden of production, plaintiff retains the ultimate burden of proving that the challenged action was the result of intentional discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.

In the context of housing discrimination claims brought under §1981, a plaintiff may establish a prima facie case by demonstrating that:  (1) the plaintiff is a member of a racial minority; (2) he or she applied for and was qualified to rent a certain property or apartment; (3) he or she was rejected; and (4) the housing remained available thereafter.  *Lindsay v. Yate,* 578 F.3d 407, 415 (6th Cir. 2009) (articulating elements under both §1981 and §1982);  *Broome v. Biondi*, 17 F.Supp.2d 211, 216 (S.D.N.Y.,1997);  *citing Cabrera v. Jakabovitz*, 24 F. 3d 372, 381 (2nd Cir. 1994) (§§1981 and 1982).

ORDER - 9

The Ninth Circuit Court of Appeals adopted the same elements for a prima facie case under 42 U.S.C. §1982, the sister statute to §1981, addressed specifically to housing discrimination.[2]  The court stated,

> This circuit has not yet defined the elements of a prima facie case for an action arising under s 1982. In its entirety, §1982 reads as follows:
>
> "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."
>
> 42 U.S.C. §1982. We are guided, however, by precedent from other circuits which have wrestled with the question of the prima facie case under s 1982. In brief, the elements of proof in §1982 actions may be deduced from the elements of a Title VII case for employment discrimination, as defined by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, a plaintiff must prove:
>
> 1) that he or she is a member of a racial minority;
>
> 2) that he or she applied for and was qualified to rent or purchase certain property or housing;
>
> 3) that he or she was rejected; and
>
> 4) that the housing or rental opportunity remained available thereafter.

*Phiffer v. Proud Parrot Motor Hotel, Inc*., 648 F.2d 548, 551 (9th Cir. 1980); *citing  Wharton v. Knefel*, 562 F.2d 550, 553-54 (8th Cir. 1977); *Smith v. Anchor Building Corp*., 536 F.2d 231, 233 (8th Cir. 1976); *Williams v. Matthews Company*, 499 F.2d 819, 826 (8th Cir.), *cert. denied*, 419 U.S. 1021, and 419 U.S. 1027 (1974); *see also, Harper v. Hutton*, 594 F.2d 1091 (6th Cir. 1979); *cf. Robinson v. 12 Lofts Realty, Inc*., 610 F.2d 1032 (2d Cir. 1979).  The Court finds that this is

---

[2] It appears that plaintiffs brought their claim of housing discrimination under §1981 rather than §1982 because of the longer statute of limitation.  Section 1981 has a four-year statute of limitations;  §1982 has a three-year statute of limitations.

ORDER - 10

the appropriate statement of elements of a prima facie case of housing discrimination brought under §1981 as well as §1982.

Both plaintiffs here have met the first element of their prima facie case, as they are members of a racial minority, African-American.  However, neither plaintiff can meet the second element, that of showing that he or she was qualified to rent or continue to rent the housing at issue.  Mr. Milan was not qualified to be a renter or co-renter because his credit rating was poor and his RSS screening score of -4 was far too low to qualify. This screening was performed by a third party using objective criteria;  it cannot be said to be the product of discrimination.  As to Ms. Hobson, she was in violation of the terms of her lease by sharing her apartment with Mr. Milan.  Further, her failure to pay rent for March and April of 2006 disqualified her from further tenancy.  Her argument that defendant should have applied her "last month" rent to March to allow her to continue her tenancy is misplaced.  By definition, the last month's rent is applied to the last month of tenancy, not to an ongoing tenancy.

Plaintiffs have argued that defendant should have applied an "override" to their disqualifying factors to allow them to rent or continue to rent at the Metropolitan Towers.  However, their argument that defendant's failure to apply an "override" is, of itself evidence of discrimination, is unavailing.  Plaintiffs allude to cases in which such overrides were applied to benefit other tenants, but these allegations are based on hearsay or evidence that is otherwise inadmissible due to lack of authentication or failure to cite to the record.  *See*, Plaintiff's Opposition, Dkt. # 175,   p. 10;  Deposition of Angela Hobson, Dkt. # 177, ¶¶ 62-64.  For example, plaintiffs contend that resident "KJ" was allowed to apply her last month's rent in a continuing tenancy.  In fact, the record shows that the last month's rent for one unit was applied

ORDER - 11

to the last month of tenancy in that unit, and the resident paid a new last month's rent for her new unit.  Declaration of Angela Hobson, Dkt. # 177-24, Exhibit 12.   Plaintiffs contend that this second last month's rent deposit was paid late by KJ, but that allegation, even if it can be proven, is not relevant.  Plaintiffs also refer to another resident, a white male, who they contend was going through a divorce and was deeply in debt, and was "denied by RSS" but given an "override" by Mf. Bjelland.  Plaintiff's Response, Dkt. # 175, p. 10.  This allegation is based upon an unauthenticated document, which plaintiffs state is a statement taken in the SOCR proceedings.  Declaration of Angela Hobson, Dkt. # 177-10, Exhibit 6.  The copy has items crossed out, including a reference to "bad credit" and "background screening," such that even if it could be considered it cannot be deemed support for plaintiffs' contentions.

Many other allegations made by plaintiffs are unsupported by citations to the record, such as a reference to a "DiMugno Dep" which is unaccompanied by any citation to the record indicating where this can be found.  Plaintiffs' Response, Dkt. # 175, p. 10.  Plaintiffs have presented hundreds of pages of exhibits with their opposition to the summary judgment motion.  Dkt. ## 175, 176, 177.   The Court is mindful of their *pro se* status, but cannot overlook the requirement that in opposing summary judgment, a party must cite to evidence in the record so that it can be found.  Even *pro se* litigants must follow the rules.[3]  The Court will not comb through the hundreds of pages in attempt to find evidence to support plaintiffs' conclusory allegations, particularly when most of the exhibits they have presented represent inadmissible hearsay.

---

[3] Plaintiffs have otherwise demonstrated a high level of understanding of legal procedure and substance.  Their briefing is articulate and contains appropriate legal citations, likely reflecting the fact that during this litigation Mr. Milan entered law school.  Dkt. # 104.

ORDER - 12

The Court therefore finds that plaintiffs have failed to make a prima facie case of discrimination, as their proof fails at element (2) of the prima facie case.  They have not demonstrated that they were qualified to rent or continue to rent an apartment at Metropolitan Towers.  As plaintiffs have not made a prima facie case, the burden does not shift to defendant to demonstrate a non-discriminatory reason for rejecting Mr. Milan's application and Ms. Hobson's continued tenancy.

Failure to make a prima facie case is not fatal to plaintiffs' claims if they are able to produce direct evidence of discrimination.  As in employment-discrimination cases, a plaintiff in a housing-discrimination case may establish an inference of discrimination and therefore a triable issue of fact through either direct or indirect evidence. *See Fair Housing Congress v. Weber*, 993 F.Supp. 1286 (C.D.Cal.1997).  Thus, "when responding to a summary judgment motion ... [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir.2004 (citation omitted). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the defendant is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998).

Plaintiffs contend they have direct evidence of discriminatory intent in the form of  three comments or statements by Ms. Bjelland.   First, plaintiffs assert that "according to Ms. Kelly and Ms. Davidson, Ms. Bjelland used the racial epithet 'nigger lips' in their presence." Plaintiffs' Response, Dkt. # 175, p. 11.   The evidence to which they point in support of this assertion consists of statements presented in the SOCR proceedings, one by Amanda Kelly and

ORDER - 13

one by Magnolia Davidson.  Dkt. # 176-29, Exhibit R;  Dkt. # 177-10, Exhibit 6.   The

admissibility problems with these SOCR statements, due to lack of authentication, have been

noted above.   Assuming for the purpose of this motion they could be properly authenticated and

considered, the Court would find that they do not constitute direct evidence of discriminatory

intent on the part of Ms. Bjelland.

       Plaintiffs' contention is that this offensive comment by Ms. Bjelland was made at a

Christmas party to Ms. Kelly, who is apparently Caucasian, in the presence of Ms. Davidson,

who is African-American.  Ms. Kelly's statement says, in full,

> I have never complained of discriminatory rental practices at Metropolitan Towers,
> and I do not know of other employees who have.

> Liz Bjelland once referred to me as having "nigger lips." She said it at a Christmas
> party.  I don't know if she said it in jest.  She has not made any other racial types of
> comments to me.

> HSC is a wonderful company, and I think this [allegation by Milan and Hobson] is
> unfortunate.

Plaintiffs' Response, Dkt. # 176-29, Exhibit R.  No date is given for the comment, other than

"Christmas."  Ms. Davidson's statement about this incident is, in relevant part,

> I did not hear Liz Bjelland refer to an employee as having "nigger lips," but I heard
> it second-hand from Amanda Kelly, who said that Ms. Bjelland called her that.

Declaration of Angela Hobson, Dkt. # 177-10, Exhibit 6.

       Plaintiffs argue that the courts have found that even a single use of the racial epithet cited

here may constitute direct evidence of discriminatory intent, citing *Rodgers v. Western-Southern*

*Life Insurance Co*., 12 F. 3d 668 (7th Cir. 1993).  However, this does not apply here.  In

assessing the relevance of racially based remarks, courts in this circuit have noted the importance

of a nexus between the remarks and the alleged acts of discrimination. *See Bowden v. Potter*, 308

ORDER - 14

F.Supp.2d 1108, 1122-23 (N.D.Cal.2004) (finding a nexus between at least one discriminatory remark and plaintiff's termination); *Marques v. Bank of America*, 59 F.Supp.2d 1005, 1019 (N.D.Cal.1999) (noting that one factor considered by the Ninth Circuit in determining whether a remark is more than a stray remark is "whether the comment is related in time and subject matter to the decisional process"); *Nesbit v. PepsiCo, Inc*., 994 F.2d 703, 705 (9th Cir.1993) (finding that the stray remark was "uttered in an ambivalent manner" and "not tied directly" to plaintiff's termination).   In light of the absence of any date for this comment, any connection to plaintiffs whatsoever, and the fact that Ms. Davidson stated in a sworn statement that she did not hear it, this isolated comment by Ms. Bjelland, while crude and inappropriate, cannot serve as direct evidence of discriminatory intent toward plaintiffs in particular or African-Americans in general.

The second comment to which plaintiffs point is another  alleged statement by Ms. Bjelland.   Mr. Milan asserts in his declaration that soon after his return from Chicago, "Ms. Davidson overheard Ms. Bjelland telling other employees in the leasing office that she could not wait to kick my 'black ass' out." Declaration of Aderus Milan, Dkt. # 178, ¶ 39.  Mr. Milan was not present. This statement by him as to what Ms. Davidson heard is hearsay and cannot be considered.   In their opposition to summary judgment, plaintiffs have not pointed to any actual evidence in the record to support their allegation regarding this statement.   The Court notes, however, that Mr. Milan did question Ms. Davidson about this when he took her deposition. The following colloquy occurred:

> Q:  Did Ms. Bjelland ever use a racial epithet or refer to my skin color in saying that she wanted to get me out of the building?
>
> A:  I never heard her call you what she called Amanda.

ORDER - 15

Q:  Have you ever heard her say that she couldn't wait to get my black ass out of the building?

A:  Yes.

Deposition of Magnolia Davidson, Dkt. # 177-6, Exhibit 4, p. 89.  Yet Ms. Davidson testified in the same deposition that she had never observed inappropriate behavior by Ms. Bjelland toward African Americans:

Q:  Okay, Now what about her treatment of African American tenants and guests?  Did you ever observe any inappropriate behavior on Ms. Bjelland's part towards those people?

A:  Not to my knowledge.

*Id.*, p. 88.

Ms. Davidson did not mention the "black ass" comment when she wrote her SOCR statement in 2006, much closer to the date of the events recited here.  Her statement indicates that she believed Ms. Bjelland had a personal dislike of Mr. Milan, but it was based on personality, not race.  She stated,

Ms. Bjelland once commented to us employees about Mr. Milan and Ms. Hobson that she "did not want them living here."  She said that when Mr. Milan was trying to get approved to move into the building.  Ms. Bjelland believed that Mr. Milan "has an arrogance about him" and that she did not like him.

However, Ms. Bjelland did not treat Mr. Milan and Ms. Hobson differently in terms of our policies, such as handling work order, their lease, and so forth.  But, she was cold toward Mr. Milan whereas she is nicer to other tenants.

Declaration of Angela Hobson, Dkt. # 177-10, Exhibit 6.

Even if plaintiffs could properly support their allegation regarding this comment with admissible evidence, it would not serve as direct evidence of discriminatory intent on the part of Ms. Bjelland.  Assuming, for the purposes of this motion only, that the unauthenticated SOCR

ORDER - 16

statement of Ms. Davidson can be considered,  it should be considered in its entirety.  The isolated comment of Ms. Bjelland alleged by plaintiffs must be viewed in the context of Ms. Davidson's other statements, which indicate that Ms. Bjelland did not treat plaintiffs differently from other tenants, and did not treat African-Americans in general any differently than other tenants and guests.  According to Ms. Davidson's statement, Ms. Bjelland's animosity toward Mr. Milan was based on a factor other than his race, and her reference to the color of his skin on one occasion does not, without more, rise to the level of direct evidence of discriminatory intent.

Plaintiffs point to a third act or statement by Ms. Bjelland which they believe indicates a general attitude of discrimination toward African-Americans.  This allegation also arises from the SOCR statement by Ms. Davidson, in which she states,

> In another instance, an African-American Seattle Sonics player called and requested an apartment.  I did not hear the conversation, but I later heard from the Sonics player that Liz Bjelland told him there were no two-bedroom units available.  Bob Hill, the coach, called me later that day, saying that he'd thought there were two-bedroom units available.  I was surprised to hear that Ms. Bjelland had told the player otherwise, and I told the coach that there were available units.  The player passed the background and credit checks and now lives there.

Declaration of Angela Hobson, Dkt. # 177-10, Exhibit 6.  As to what Ms. Bjelland allegedly told the prospective renter, this statement is inadmissible hearsay and cannot be considered.

Plaintiffs' allegations of direct evidence of discriminatory intent are unsupported by admissible evidence, or do not rise to that level.  As plaintiffs have failed to make a prima facie case of discrimination, and have not produced admissible evidence that would constitute direct evidence of intent to discriminate, defendant's motion for summary judgment on plaintiffs' §1981 claim shall be granted.

### III.  State Law Discrimination Claim

Plaintiffs also assert their discrimination claim under the Washington Law Against Discrimination ("WLAD"), RCW 49.60.  They do not specify which section of the statute they invoke.  Discrimination in the housing context is specifically addressed in RCW 49.60.222, but that section provides for administrative proceedings.  RCW 49.60.230 to RCW 49.60.280, and RCW 49.60.340  Their claims are therefore deemed brought under the more general provisions of  RCW 49.60.030, which states in relevant part,

Freedom from Discrimination---Declaration of Civil Rights

(1) The right to be free from discrimination because of race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:

. . .

(b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement;

(c) The right to engage in real estate transactions without discrimination, including discrimination against families with children;

. . .

(2) Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

RCW 49.60.030(1),(2).

ORDER - 18

1    Defendant asserts that plaintiffs' claims under the WLAD are barred by the statute of

2  limitations.  While chapter 49.60 RCW does not expressly provide for a particular statute of

3  limitations,  courts have applied the general three-year statute of limitations for personal injury

4  claims set forth in RCW 4.16.080(2) to WLAD claims. *See Adler v. Fred Lind Manor*,

5  153Wash.2d 331, 355-56, *citing Nearing v. Golden State Foods Corp*., 114 Wash.2d 817, 820

6  (1990) (racial discrimination); *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wash.App.

7  607, 613 (1984) (disability and/or racial discrimination).  For discrete discriminatory acts, such

8  as those claimed here, the statute of limitations period runs from the act itself. *Antonius v. King*

9  *County*, 153 Wash.2d 256, 264, 103 P.3d 729 (2004), (*citing Nat'l R.R. Passenger Corp. v.*

10  *Morgan*, 536 U.S. 101, 108-13, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  Once the statute of

11  limitations period has run, a discrete act is not actionable, even if it relates to other acts alleged in

12  timely filed charges. *Antonius*, 153 Wash.2d at 264 (*citing Morgan*, 536 U.S at 108-13).

13    Plaintiffs filed their lawsuit on March 20, 2009. Dkt. # 1, 3.  Thus, claims based on

14  alleged discriminatory acts that occurred prior to March 20, 2006 are time-barred.  Mr. Milan's

15  claim of discrimination is based upon the denial of his application to be an "add-on" roommate

16  of Ms. Hobson.  He received notice of that denial on or about February 1, 2006, from Ms. Kim in

17  the leasing office.  Declaration of Aderus Milan, Dkt. # 178, ¶ 45.  He argues, however, that the

18  last act of discrimination occurred on March 20, 2006 when Ms. Bjelland denied his request for

19  an appeal.   "Ms. Bjelland denied Mr. Milan's request for an appeal of his denial on March 20,

20  2006, and Ms. Hobson was evicted two months later."  Plaintiffs' Response, Dkt. # 175, p. 21.

21  This argument is based upon the assertion in plaintiff's declaration that

22         [o]n March 16, 2006 we delivered to Ms. Kim a letter to be forwarded to Ms. Bjelland,
           rejecting her "mutual termination agreement" and asking again that I be allowed to
23         appeal my denial.  In crafting the letters [sic] we emphasized that Ms. Hobson needed
           me there because she was unable to physically handle basic everyday chores and

24

1       activities alone.  The letter included an advanced cashier's check for April's rent of
2   $1,190---$1,090 and the $100 month-to-month fee paid in one check per the terms of
    her agreement---and a request to apply her last month's rent, which had been prepaid
3   in September, to the month of March.

4       On March 17, 2006, Ms. Bjelland sent to Attorney Randy Redford a memo asking for his
    "thoughts" on how to handle Ms. Hobson's offer, but stating that she preferred not to
5   accept it.

6       On March 20, 2006, Ms. Bjelland returned the cashier's check with a letter rejecting
    Ms. Hobson's compromise and refusing to add me to the rental agreement.

7       Declaration of Aderus Milan, Dkt. # 178, ¶¶ 78-80.  The letter described by plaintiff,

8   dated March 16, 2006, is signed by Ms. Hobson alone and relates only to the rent check proposal

9   and request to apply the last month's rent to March.  Declaration of Elizabeth Bjelland, Dkt. #

10  111, Exhibit K.  No where does this letter mention or purport to be an appeal of the decision

11  regarding denial of Mr. Milan's application.  *Id*.  The only mention of Mr. Milan is the statement,

12  quoted above, that "I am maintaining my insistence that your application requirements of Aderus

13  were inequitable and therefore, unlawful."  *Id*.  This statement cannot be deemed a request to

14  appeal the decision with respect to Mr. Milan.  Ms. Bjelland's March 20, 2009 response to Ms.

15  Hobson cannot therefore be regarded as a discriminatory act with respect to Mr. Milan.

16      Nor does Ms. Bjelland's March 20, 2006 response itself support plaintiffs' argument on

17  the statute of limitations.  Dkt. # 176-23, Exhibit L.  The Court has reviewed this document and

18  finds that it does not represent a discrete act of discrimination against Mr. Milan;  it relates solely

19  to Ms. Hobson and the two requirements that she must meet in order to avoid eviction for failure

20  to pay rent and violation of the terms of her lease.  These two requirements were (1)  proof that

21  Mr. Milan actually resided at a different address, and (2)  payment of March rent and all late and

22  other fees.  *Id*.  There was no action or decision expressed by Ms. Bjelland with respect to Mr.

23  Milan constituting a discrete act for the purposes of the statute of limitations.

24

1    Mr. Milan's claim of discrimination is therefore time-barred, as is Ms. Hobson's

2  disability claim, to the extent it is based upon defendant's alleged failure to accommodate her

3  disability by allowing her to have a roommate to assist her.  This result is not prejudicial to

4  plaintiffs.  As shall be demonstrated below,  plaintiffs' claims would fail if addressed on the

5  merits.

6    Ms. Hobson's WLAD claim of discrimination on the basis of her race and disability

7  (apart from failure to accommodate) arguably falls within the statute of limitations, as she was

8  evicted from the apartment after March 20, 2006.  It can therefore be addressed on the merits.

9    Washington courts analyze discrimination claims using the burden-shifting framework

10  established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the

11  plaintiff worker bears the initial burden of proving a prima facie case.  *Marquis v. City of*

12  *Spokane*, 130 Wash.2d 97, 113, 922 P.2d 43 (1996).  In the context of discrimination in housing

13  on the basis of either race or disability, Ms. Hobson must demonstrate, for her prima facie case,

14  that (1) she belongs to a protected class (disabled or racial minority); (2) she met the minimum

15  qualifications to live in the Metropolitan Tower apartments;  (3) respondents, knowing that Ms.

16  Hobson was a member of the protected class, evicted her for reasons based on her race or

17  disability; and (4) tenants, who are not members of either protected class, engaged in similar

18  conduct and were not evicted.  *See,  Callahan v. Walla Walla Housing Authority*, 126

19  Wash.App. 812, 819, 110 P.3d 782 (2005) ("The specifics of the prima facie case are suggested

20  by the particular form of discrimination alleged.).

21    The Court determined in addressing plaintiffs' claims under §1981 that the first element

22  of the prima face case was met with respect to claims of racial discrimination.  Assuming,

23  without deciding, that Ms. Hobson was at the time disabled as that term is defined in the

24

1 WLAD,[4] her prima facie case still fails at the second step.  She cannot demonstrate that she was

2 qualified to remain in the apartment and avoid eviction, because she failed to pay her rent.

3 Defendant explained to her that she could not simply apply her last month's rent to her obligation

4 for March, unless she agreed to vacate.   Payment of rent for March, together with late fees, was

5 a minimum qualification for remaining in the apartment, and by failing to meet this qualification

6 Ms. Hobson destroyed her prima facie case.  She cannot argue that she tendered the rent and it

7 was refused, because the cashier's check she tendered was clearly designated for April, not

8 March.

9   In the absence of a prima facie case, Ms. Hobson must offer direct evidence of intentional

10 discrimination against her on the basis of race or disability.  As shown in the discussion under

11 the §1981 claim, the direct evidence of discrimination offered by plaintiffs is either inadmissible,

12 irrelevant, or fails to constitute direct evidence of intent to discriminate.

13   Plaintiffs' WLAD claims fail, either as barred by the statute of limitations, or on the

14 merits.  Defendant's motion for summary judgment shall accordingly be granted on the WLAD

15 claims.

16   **IV.  Breach of Contract and Other State Law Claims**

17   To the extent that plaintiffs' Amended Complaint (Dkt. # 144) purports to plead state law

18 claims for wrongful eviction, breach of contract, spoliation of evidence, harassment, retaliation,

19 and intentional infliction of emotional distress, the Court declines jurisdiction pursuant to 28

20 U.S.C. §1367(c).  These claims have not been properly plead in the amended complaint, nor have

21

22

23 [4] The WLAD provides, in relevant part:  "Disability" means the presence of a sensory, mental, or physical impairment that: (i) Is medically cognizable or diagnosable; or (ii) Exists as a record or history; or (iii) Is perceived to exist whether or not it exists in fact. RCW 49.60.040(7)(a).

24

1    they been argued on summary judgment.  They are not properly before the Court, and the Court

2    declines to exercise jurisdiction over them at this late date in the proceedings.

3

4                                          CONCLUSION

5           The admissible facts presented by the parties, viewed in the light most favorable to

6    plaintiffs, shows that there are no genuine issues of fact for trial, and defendant is entitled to

7    judgment as a matter of law.  Defendant's motion for summary judgment (Dkt. # 110) is

8    accordingly GRANTED as to plaintiffs' claims of housing discrimination under 42 U.S.C. §1981

9    and RCW 49.60, and these claims are DISMISSED as to both plaintiffs.  The Court declines to

10   exercise supplemental jurisdiction over plaintiffs' additional state law claims, pursuant to 28

11   U.S.C. §1967(c), and these claims are DISMISSED without prejudice.

12          The Clerk shall enter judgment in favor of defendants on the claims under §1981 and

13   under RCW 49.60.

14          Dated this 10th day of March 2011.

15

16

17                                          _____

18                                          RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24